FRANK UPP, Appellant, v. FRANK W. DARNER, Appellee.

**Actionable negligence defined.** Actionable negligence consists in the breach of some duty; but this duty may be general and owing to everybody, or it may be owing to an individual. Where the duty is general it can not become the foundation of an action until some individual is placed in a position which gives him occasion to insist upon its performance, and it then becomes a duty to him personally.

**Same: CARE OF PREMISES: DUTY OF OWNER.** One is under no duty to keep his premises in a safe condition for trespassers; but if he expressly or by implication invites persons to come upon his premises he must exercise ordinary care to render them reasonably safe.

**Same.** One who has disposed of his premises is not liable thereafter for an injury occurring thereon, but the purchaser who expressly or by implication invites another to come upon the premises is under the duty of exercising reasonable care for the safety of the place.

Thus, where the original owner erected a barb wire fence across the rear of his lot but not on the line, and thereafter conveyed the property to another, he was not liable for injury to a trespasser, or one invited to come upon the premises by the purchaser, from contact with the fence.

*Appeal from Wapello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

MONDAY, MARCH 13, 1911.

ACTION at law to recover damages due to the erection of a barbed wire fence by the defendant within the city of Ottumwa, contrary to an ordinance thereof, resulting in the death of an animal owned by plaintiff which while frightened ran into the fence and received injuries which necessitated her killing. The defendant, while admitting the erection of the fence, pleaded that he had sold the premises upon which it had been placed, before the accident, and that after he sold the property the fence was cut, part of it knocked off the poles, and some of the wires placed across a driveway. He also pleaded that the fence as erected by him did not constitute a violation of the city ordinance. Upon the issues thus joined the trial court directed a verdict for defendant, and plaintiff appeals.—*Affirmed.*

*Chester W. Whitmore,* for appellant.

*Tisdale & Heindel,* for appellee.

DEEMER, J.—The city of Ottumwa had an ordinance which made it unlawful for any one to use any barbed wire, either in the construction or maintenance of any fence, inclosing in whole or in part any lot within the corporate limits of said city. In the year 1907 defendant was the owner of lot one hundred and sixty, which was within the limits of the city, and, for the purpose of keeping teams from driving over this lot, he hung a single strand of barbed wire between two electric light poles some one hundred and fifty-two feet apart at the rear of his lot. This was an inside lot, and there was no alley at the rear thereof. The strand of wire was three or four feet north of the south boundary line of the lot, and, as we have said, was placed there to keep coal teams from driving

across the rear end. This wire was often down and was put up by defendant, save the last time he saw it when he owned the place, and again after he sold it. So that according to defendant's testimony, who was offered as witness for plaintiff, the wire was down when he sold the place, was again replaced, then came down again, and had been replaced by some one at the time when the accident in question occurred. Some time prior to the accident defendant sold the property in question to one Sampson. Plaintiff was a contracting carpenter and as such had undertaken the construction of a house on lot one hundred and sixty for the then owner thereof, who had purchased the same from the defendant. On May 28, 1908, he drove into the east side of the lot from the front to a point thirty or forty feet from the rear of the lot, got out of his buggy, fastened a twenty-pound iron hitching weight to the bit of the animal he was driving, and turned to speak to one of his workmen, who stood near with the working plans for the building, which was being constructed, in his hands. The wind caused a fluttering of the pages of these plans, and this frightened the animal so that she started to run, dragging the weight by her bit over the smooth wet grass. Before plaintiff could overtake her, she ran into the strand of barbed wire which was then hanging loosely between the posts, causing the injuries which resulted finally in her death. Upon this state of facts, the trial court, at the conclusion of the testimony, directed a verdict for defendant, and the appeal is from this ruling.

Plaintiff's counsel very frankly admit that, if this be an action of nuisance, no recovery can be had of defendant for the reason that he was not maintaining the same when the accident happened. His insistence is that his action is for a tort (in other words, for negligence), and that defendant is responsible for that negligence both at common law and because of his violation of the ordinance of the city.

We shall assume for the purpose of argument that defendant would have been liable both at common law and under the statute had the accident happened while he was the owner of the property and had expressly or impliedly invited plaintiff to enter upon the premises where said barbed wire was being maintained, and this liability might have been predicated upon the theory that the wire was a nuisance or upon negligence of the defendant in erecting the wire. We shall also assume, for present purposes, that the erection of the wire was contrary to the ordinance of the city, and that by reason thereof negligence might have been found by the jury, had defendant retained the ownership of the property.

Eliminating, as we must, the idea that defendant may be charged because of his maintenance of a nuisance, we have the single question: Is he liable on the theory of negligence? It is fundamental, of course, that the first requisite in establishing negligence is to show the existence of a duty which it is supposed has not been performed. There can be no negligence unless there is a duty which has been violated. *Eakins v. Railway Co.,* 126 Iowa, 324; *Hughes v. Railroad Co.,* 71 N. H. 279 (51 Atl. 1070, 93 Am. St. Rep. 518). Actionable negligence is the breach of a duty owing by defendant to plaintiff, and where there is no duty there is no negligence. Again, in *Faris v. Hoberg,* 134 Ind. 274 (33 N. E. 1029, 39 Am. St. Rep. 261), it is said: "In every case involving actionable negligence, there are necessarily three elements necessary to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; (3) an injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evi-

1. ACTIONABLE NEGLIGENCE DEFINED.

dence insufficient." This duty may be general and owing to everybody, or it may be particular and owing to a single person only by reason of his peculiar position. But a duty owing to everybody can never become the foundation of an action until some individual is placed in position which gives him occasion to insist upon its performance. It then becomes a duty to him personally. Cooley on Torts (3d ed.) p. 1412.

It is difficult at times to distinguish between actions of nuisance and actions bottomed on negligence; but in either case there must be a breach of some duty on the part of the defendant before an action will lie against him. Thus one is under no duty to keep his premises in a safe condition for the visits of trespassers. But, if he expressly or by implication invites others to come upon his premises, it is his duty to be reasonably sure that he is not inviting them into a place of danger, and to this end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. *Wagner v. Railroad*, 124 Iowa, 462; *Dalin v. Railway Co.*, 188 Mass. 344 (74 N. E. 597).

*2. SAME: care of premises: duty of owner.*

But after the owner of such premises has disposed of them he is no longer liable for what may happen thereon for the reason that he is in no position to control the use thereof, and his duty to persons who may be invited there by another is at an end. The purchaser who invites the guest or visitor upon the premises then owes a duty to the person invited, and the person so invited is a stranger to the original owner.

*3. SAME.*

It is for this reason that plaintiff admits defendant can not be held for nuisance. But he contends that an action for negligence will lie upon the same state of facts. Here again, however, there must be found a duty upon the part of the defendant to the person who suffered the injury. Remembering that the fence in question was at the rear of the lot which defendant formerly owned and was upon

the lot itself and not at the lot line, defendant would not have been liable for negligence even to a trespasser upon his lot had he continued to own the property. After he sold it, he had no control over the use of the property and was under no duty to one who was invited thereon by his grantee. This grantee had no authority to extend the invitation for him, and the plaintiff under the facts in this case was a stranger to the defendant; defendant owing him no duty whatever. Moreover, defendant could not, after sale, go upon the property to tear down the barbed wire. This was for his grantee to do if he saw fit, and if he neglected to do so to become responsible to any one whom he invited upon the premises and who was injured by his want of care or through failure to abate the nuisance.

The case should be distinguished from one where a barbed wire fence is erected along a public street or highway near where all people have a right to pass. In such cases it may possibly be that the person who erects the fence may be liable to a passer-by who is injured, although the person building the fence may have disposed of the property. Such a case would be much stronger than the one here presented; but we do not say that even in such an one recovery might be had from the original wrongdoer. Our conclusions find support in the following, among other cases: *Tel. Co. v. Beatty,* 63 Ark. 65 (37 S. W. 570); *Smith v. Clarke Hardware Co.,* 100 Ga. 163 (28 S. E. 73, 39 L. R. A. 607); *Daugherty v. Herzog,* 145 Ind. 255 (44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204); *Woodruff v. Bowen,* 136 Ind. 431 (34 N. E. 1113, 22 L. R. A. 198; *Smith v. Trimble,* 111 Ky. 861 (64 S. W. 915); *Boardman v. Creighton,* 95 Me. 154 (49 Atl. 663); *Cochran v. Sess,* 168 N. Y. 372 (61 N. E. 639); *Paolino v. McKendall,* 24 R. I. 432 (53 Atl. 268, 60 L. R. A. 133, 96 Am. St. Rep. 736); *Uthermohlen v. Bogg's Run Co.,* 50 W. Va. 457 (40 S. E. 410, 55 L. R. A. 911, 88 Am. St. Rep. 884). Several barbed wire cases are to be found in the books;

but they are practically all against the owner or occupant of the premises. Some of these proceed upon the doctrine of negligence and some upon the theory of nuisance; but in either event the defendant held liable was found guilty of some negligent act and was charged because he was maintaining defective premises. In no case to which our attention has been called has any person ever been held liable for injuries such as were received in this case. After defendant sold his property, he was no longer under any duty to persons who might be invited upon the premises by his grantee for the reason that he had no control over such grantee, could not dictate as to who should be invited or kept off the premises, and could not have removed the fence even had he been so disposed. As already indicated, we are not now considering a case of public nuisance for the reason that the fence was wholly upon private property and not in a position to jeopardize the general public. As defendant, after having sold the property, owed plaintiff no duty and did not in any manner invite plaintiff upon the dangerous or defective premises, there is no liability on his part, and the trial court was right in directing the verdict. *West v. Ward,* 77 Iowa, 323, and *Carskaddon v. Mills,* 5 Ind. App. 22 (31 N. E. 559), so strongly relied upon by appellant, are not in point, as an examination will show.

The judgment must be, and it is, *affirmed.*